# Richmond

RANDOLPH HOWARD, ET AL. v. COUNTY SCHOOL BOARD OF ALLEGHANY COUNTY.

November 27, 1961.

Record No. 5334.

Present, All the Justices.

*T. W. Messick* and *Harvey S. Lutins*, for the appellants.

*R. B. Stephenson, Jr.* (*J. W. C. Johnson*, on brief), for the appellee.

EGGLESTON, C. J., delivered the opinion of the court.

Pursuant to the provisions of § 22-161.1 *ff*. of the Code of 1950 (1960 Cum. Supp.), Randolph Howard and others filed their petitions in the court below alleging that they were "not less than ten per centum of the number of qualified voters voting in the last pre-

ceding presidential election in Alleghany county," that they were of opinion that certain real estate known as the "'Talbott site" and recently deeded to the County School Board of Alleghany county was no longer needed for public purposes, and requesting that the court "order an election by the people of Alleghany county to determine whether or not" such property was so needed.

The County School Board of Alleghany county, hereinafter referred to as the Board, filed its petition in the proceeding alleging that after "full and careful consideration" it had acquired the property as the site for a new county high school to be erected thereon; that the statute pursuant to which the petitioners, Howard and others, were seeking an election to determine whether the real estate was needed for public purposes was in conflict with certain sections of the Constitution of Virginia and therefore invalid and void. The Board prayed that it be made a party defendant to the proceeding, that the statute be declared null and void, and that the court refuse to order the referendum prayed for in the original petitions.

After hearing and considering the case on the pleadings, and without taking any evidence, the lower court entered an order adjudicating that the statute "in so far as it applied to the question here under consideration is unconstitutional," and dismissing the original petitions. From that order Howard and the other petitioners have appealed. The questions presented by the assignments of error are whether the court erred in holding unconstitutional the statute under which the original petitions were filed and in dismissing such petitions.

The record contains no recital of facts other than is found in the pleadings and the exhibits. It appears from a copy of a resolution of the Board, filed as an exhibit with its petition, that the Talbott site, containing about 36 acres of land, was purchased by the Board in 1958, at a cost of $70,000, after the Board had decided and recorded its opinion that it was "most appropriate and suitable" for a school site. It also appears from the statements in the briefs and in the oral argument before us, that two proposed bond issues to provide funds for the construction of buildings on the site were defeated at successive elections in 1959. Still being of opinion that the construction of a new high school on the site was of paramount importance, the Board took steps to procure the necessary funds for that purpose from the Literary Fund and other sources. However, Howard, one of the appellants in the present suit, and other citizens instituted a suit in the Circuit Court of Alleghany county seeking to restrain the Board from proceeding further with this plan. That bill was dismissed on a demurrer and we

denied an appeal in that case in February, 1961. The present proceeding is a further attempt of Howard and others to thwart the purpose of the Board to construct the high school building on the site and thus devote the property to the use for which it was acquired.

The statute (Acts 1959, Ex. Sess., ch. 68, p. 151) under consideration will be referred to as it is codified in the 1960 Cumulative Supplement to the Code of 1950. Section 22-161.1 reads:

"In any county, city, or town, if the town constitutes a separate school district, where a number of qualified voters not less than ten per centum of the number of voters voting in the last preceding presidential election in that county, city, or town are of the opinion that any specific real or personal school property or properties are no longer needed for public purposes and the school board has not initiated proceedings to sell or exchange that real or personal property or properties, then on petition of a number of qualified voters not less than ten per centum of the number of voters voting in the last preceding presidential election in the county, city, or town, requesting the same, the circuit court of the county or the corporation court of the city or the judge thereof in vacation shall order an election by the people of the county, city, or town to be held not less than twenty nor more than thirty days after entry of the order, to determine whether the real or personal school property or properties specified in the petition are or are not needed for public purposes."

Section 22-161.2 provides for the printing and form of the ballot to be voted at such election.

Section 22-161.3 provides for the marking of the ballot and the conduct of the election. Section 22-161.4 reads:

"If it shall appear from the returns that a majority of the qualified voters voting thereon at such election shall vote that any specific property is not needed for public purposes, an order shall be entered of record accordingly, a copy of which shall be forthwith certified by the clerk of such court to the school board, which shall within thirty days after the receipt of the copy of the order initiate proceedings to sell the specific property pursuant to the applicable provisions of law, upon such terms and conditions as the court may deem necessary to protect the public interest and by order of record approve."

Section 22-161.5 states that the foregoing provisions "shall be in addition to all other provisions of law and shall not impair the right or authority granted by law to any board, commission, governing body or court to sell, exchange, convey, or otherwise dispose of school property."

We agree with the position of the Board that this statute violates § 133 of the Constitution of Virginia and is invalid. That section reads as follows:

"Sec. 133. *School districts; school trustees.* The supervision of schools in each county and city shall be vested in a school board, to be composed of trustees to be selected in the manner, for the term and to the number provided by law. * * * "

Section 129 of the Constitution imposes upon the General Assembly the obligation to establish and maintain an efficient system of public free schools throughout the State. In plain language § 133 vests in the local school board, as the agency of the State, the "supervision of schools." *Harrison* v. *Day,* 200 Va. 439, 452, 106 S. E. 2d 636, 646; *Kellam* v. *School Board of City of Norfolk,* 202 Va. 252, 254, 117 S. E. 2d 96, 97, 98. In such supervision it is an essential function of the local board to determine whether a particular property is needed for school purposes and the manner in which it shall be used.

Yet the effect of the statute under review is to divest the board of the exercise of that function and lodge it in the electorate. Section 22-161.1 provides that if a specified number of the qualified voters "are of the opinion that any specific real or personal school property or properties are no longer needed for public purposes and the school board has not initiated proceedings to sell or exchange" the same, then upon the petition of such voters, the circuit court of the county or the corporation court of the city "shall order an election" to determine whether such property is needed for public purposes. Under § 22-161.4, if the majority of voters at such election shall vote that any specific property is not needed for public purposes, an order to that effect shall be entered of record and a copy thereof served upon the school board. Whereupon the board "*shall* within thirty days after the receipt of the copy of the order initiate proceedings to sell the specific property." (Emphasis added.) The language is mandatory and thus the board is stripped of any or all authority to exercise its judgment in the matter.

In *Harrison* v. *Day, supra,* we held that a statute which divested the local school board of the power and control over the schools and lodged such authority in the Governor and State Board of Education was in violation of § 133 of the Constitution. (200 Va., at page 452, 106 S. E. 2d, at pages 646, 647.) The same is true of the statute now under consideration.

It will be observed that the operation of the statute is not limited to property which the board deems unnecessary for school purposes and

has been abandoned. On the contrary, the determination of whether the property is so needed or should be abandoned is taken from the board and lodged in the electorate. Moreover, by virtue of the statute, the board may be divested of all school property, even though devoted to a present use, by an electorate which may disagree with its policies. Clearly the board cannot properly exercise "supervision" of schools entrusted to it if it may thus be divested of property which in its judgment is being used or should be used for school purposes.

"We have frequently said that the test of the constitutional validity of a law is not merely what has been done under it, *but what may by its authority be done.*" *N.A.A.C.P.* v. *Harrison*, 202 Va. 142, 162, 116 S. E. 2d 55, 70, 71, and cases there cited. Tested by that principle the statute is plainly invalid.

In support of their contention that the statute is free of constitutional defect, the appellants rely mainly upon two decisions of this court, *DeFebio* v. *County School Board of Fairfax County*, 199 Va. 511, 100 S. E. 2d 760, and *Commonwealth* v. *School Board of City of Norfolk*, 109 Va. 346, 63 S. E. 1081. Neither supports that contention.

In the *DeFebio* case, *supra*, we held that the Pupil Placement Act (Acts 1956, Ex. Sess., ch. 70, p. 74; Code, 1958 Cum. Supp., § 22-232.1 *ff*.), giving a central State Pupil Placement Board the authority to direct the enrollment of pupils in a particular school, did not violate § 133 of the Constitution which vests the supervision of public schools in the local boards. We there pointed out that, "The general power to supervise does not necessarily include the right to designate the individuals over whom supervision is to be exercised. If the legislature deems it advisable to vest the power of enrollment or placement of pupils in an authority other than the local school boards, it may do so without depriving such local school boards of any express or implied constitutional power of supervision." (199 Va., at page 513, 100 S. E. 2d, at page 762.) No such question is involved in the present case.

The case of *Commonwealth* v. *School Board of City of Norfolk*, *supra*, did not involve an interpretation of § 133 of the Constitution. There the question was whether a city school board or the State Board of Education had the authority to purchase school furniture for local public schools. By the Act of March 15, 1906 (Acts 1906, ch. 248, p. 432), § 1433 of the Code of 1904, defining the powers and duties of the State Board of Education, was amended so as to declare that that board should "select" textbooks, school furniture and educational appliances for the public schools of the State. Two days later, at the same session, § 1538 of the Code of 1904 was amended (Acts 1906,

ch. 293, p. 513) to read that the school board of a city should have the power and duty to "provide" schoolhouses with proper furniture and appliances. The local school board contended that the later act superseded the former and thus gave to it the authority to supply these facilities to the local schools.

This court held that the two acts should be construed together, and that, when that was done, it appeared that it was the duty of the local board to "provide" such furniture as was "selected" by the State Board. Continuing, the opinion held that if the local board was correct in its position that the later act authorizing it to "provide" the furniture superseded the earlier act authorizing the State Board to "select" such furniture, then the later act would be in violation of § 132 of the Constitution which empowers the State Board to "select textbooks and educational appliances" for use in the schools. (109 Va., at pages 350, 351.) Clearly that opinion in no way relates to the question with which we are now concerned.

For these reasons we hold that the statute under consideration is unconstitutional and void and that the lower court properly dismissed the original petitions filed pursuant thereto.

*Affirmed.*