## CIRCUIT COURT OF BATH COUNTY

Bath County Concerned Parents
and Citizens Association

v.

Bath County School Board

January 7, 1975

Case No. 165

By JUDGE ROSCOE B. STEPHENSON, JR.

Petitioner, Bath County Concerned Parents and Citizens Association (sometimes referred to herein as "the Association"), filed its amended petition pursuant to the provisions of Chapter 21 of Title 2.1 of the Code (1973 Replacement Vol., § 2.1-340 to § 2.1-346, inclusive), known as "The Virginia Freedom of Information Act" (sometimes referred to herein as "the Act"). Petitioner prays that three meetings conducted by the defendant, County School Board of Bath County (sometimes referred to herein as "School Board"), be declared null and void and that the defendant be permanently enjoined from pursuing any business authorized at said meetings and from voting on the issue of confirming any employment contracts with school teachers which were authorized at any of said meetings. The Association contends that such relief is warranted because of alleged violations of the Act by the School Board.

The first issue to be resolved is whether the Act applies to a county school board. The specific section of the Act to be considered is § 2.1-343 which reads:

Except as otherwise specifically provided by law and except as provided in §§ 2.1-344 and 2.1-345, all meetings shall be public meetings. Information as to the time and place of each meeting shall be furnished to any citizen of this State who requests such information.

Defendant contends that the clause in this section which reads, "[e]xcept as otherwise provided by law," must be read and considered in conjunction with Sections 22-45 and 22-46. These sections read as follows:

§ 22-45. *Regular meetings.* The school board shall meet annually in July at which time the board shall fix the time for holding regular meetings for the ensuing year, and may adjourn from day to day, or time to time, before the time fixed for the next regular meeting, until the business before it is completed.

§ 22-46. *Special meetings.* The school board may also hold special meetings when necessary, at such time and places as they may find convenient, and shall have power to adjourn from time to time, as the members may deem necessary. Special meetings of the school board shall be held when called by the chairman or requested by two or more members thereof. Each school board shall fix its own procedure for calling and holding of any special meeting.

Two requirements are set forth in § 2.1-343. (1) "all meetings shall be public meetings," and (2) "information as to the time and place of each meeting shall be furnished to any citizen" who requests such information. I do not read anything in either § 22-45 or § 22-46 which could be construed as a specific exception to these two requirements. Moreover, Section 2.1-341, in defining "meeting or meetings," expressly provides that the words include meetings of school boards "when sitting as a body or entity." I

hold, therefore, that the Act applies to county school boards.

Two witnesses who are citizens of the State testified that they had requested information as to the time and place of each meeting of the School Board. Dallas F. Bennett, Jr., a member of the Association, testified that he asked the chairman of the School Board, Edsel Ford, for such information and that Mr. Ford said to him, "Yes, the public will be notified and I will notify you personally." Mr. Bennett further testified that he never received any personal notice of any meetings which were held thereafter. He did say, however, that he was aware of the time and place of the regular meetings of the school board. Ms. Sarah R. Layman, a reporter for the local newspaper, *The Recorder*, testified that she requested such information on two occasions (April 23, 1974, and May 5, 1974), and that she did not begin to receive such information until "the middle of June." She also stated that she knew of the time and place of regular meetings. The evidence further disclosed that Thomas C. Spencer, Esquire, petitioner's attorney, wrote a letter to the Division Superintendent of Schools, Russell L. Thomas (who also serves as Clerk of the School Board), requesting such information. (Plaintiff's Exhibit C). Although Mr. Thomas received this letter on May 28, 1974, he failed to inform Mr. Spencer as to the time and place of the next meeting of the School Board which was a regular meeting held on June 4, 1974. By letter dated June 11, 1974, Mr. Thomas did advise Mr. Spencer that he would be given notice of all future meetings of the School Board until his request was rescinded in writing. (Plaintiff's Exhibit D). The record disclosed that such information has been furnished to Mr. Spencer ever since that letter.

The Court is called upon to review three meetings of the School Board for the purpose of determining whether or not there has been a compliance with the two requirements of § 2.1-343.

### The Meeting of May 8, 1974

In the Spring of 1974, the School Board had submitted proposed employment contracts to approximately sixty-five current teachers. These contracts, if

executed by both parties, would be applicable for the school year 1974-75. Approximately forty-five of these teachers refused to sign these contracts. The principal reason centered around a dispute over salaries, although administrative grievances played a part as well. When the deadline for signing contracts expired, the School Board extended the time. By the month of May it became evident that the forty-five "hold outs" were not going to renew their contracts and the School Board began to make arrangements for the employment of others to replace them. Pickets were located around the School Administration Building and approximately 1100 registered voters of the County signed a petition protesting the School Board's actions. Because of this public outcry, the School Board scheduled a public hearing of the controversy at the County Court House on May 8, 1974, at 7:30 o'clock, P.M. A crowd estimated at 600 packed the courtroom. The Commonwealth's Attorney was selected as the moderator of the meeting. The public hearing lasted approximately 2½ hours and the undisputed evidence disclosed that the crowd was quite heated, angry and hostile. When it appeared that everyone present had had an opportunity to be heard, the public hearing was terminated. As the moderator was leaving the gathering, he encountered some hostility and resistance and a scuffle of sorts resulted. The crowd remained in the Courtroom and, according to defendant's evidence, the crowd became so disorderly and unruly, its members mutually agreed to meet elsewhere to conduct the remainder of the scheduled business. Accordingly, the meeting at the Courthouse was adjourned at 10:15 P.M. "because of fear of violence due to an incident occurring during the intermission." (Plaintiff's Exhibit A). At 10:30 P.M. the same evening, a special meeting of the School Board was held at the home of Mrs. Ruth E. Dalton, a member of the School Board, for the "purpose of approving the April minutes and April bills and adopting School Board Policies." Two of the five members were absent from this special meeting. One of them, Robert P. Carroll, received no notice of the meeting. At this special meeting the April bills were approved. The three members present also adopted certain policies for the School Board. Although the evidence failed to clearly disclose what policies were approved, it

appears that one policy was to the effect that present school teachers were prohibited from talking with prospective new teachers. Neither Mr. Bennett nor Ms. Layman (who had previously requested that they be informed as to the time and place of any meetings of the School Board) were advised of this special meeting.

This special meeting was clearly illegal for two reasons. The first reason, and perhaps the most obvious, is that it was not a "public meeting" as required by § 2.1-343. School board meetings cannot be held in private homes. While § 22-46 provides that "the school board may also hold special meetings when necessary, at such time and *places* as they may find convenient," this does not mean private places. Public bodies must meet in public places. Public places are places open and available to the public generally. The second reason this meeting was illegal is that one of the School Board members received no notice of the meeting. Each member must be given reasonable notice of the time and place of any special meeting. Section 22-46 states that the "school board shall fix its own procedure for *calling* and holding of any special meeting." No evidence was presented showing that a procedure had been adopted for calling and holding special meetings. Such a procedure, in compliance with Section 22-46, is required and should be adopted. But whether adopted or not, the notice to Board members must be timely and reasonable under the circumstances and such meetings must be held in public. Mr. Bennett and Ms. Layman should have been informed as to the time and place of this meeting, but, for reasons hereinafter stated, I do not think this failure, in and of itself, is sufficient grounds to invalidate the meeting.

### The Meeting of May 20, 1974

The School Board met again on May 20, 1974. This was a special meeting attended by all members and held at the regular meeting place (the Administration Building). Also present at a portion of this meeting, though apparently quite by chance, were certain members of the Association and their attorney, Mr. Spen-

cer. Neither Mr. Bennett nor Ms. Layman received information as to the time and place of this meeting.

Failure to inform Mr. Bennett and Ms. Layman was a violation of § 2.1-343, but, for reasons hereinafter stated, this violation, standing alone, is not a sufficient basis for nullifying this meeting.

### The Meeting of June 4, 1974

The meeting of June 4, 1974, was a regular meeting held at the Administration Building with all members present. An announcement of the time for holding this meeting appeared in a newspaper having general circulation in Bath County and in other newspapers as well. At this meeting the School Board, among other things, reconsidered and again approved all actions which had been taken at the meetings of May 8th and May 20th.

The only alleged violation of the Act respecting this meeting was the failure of the School Board to inform Mr. Spencer, the Association's attorney, as to its time and place. As previously stated, Mr. Spencer had expressly requested such information by his letter of May 24, 1974. Clearly this failure on the part of the School Board was violative of § 2.1-343. The ultimate question for decision, however, relates to whether or not this violation, standing alone, is sufficient cause for invalidating this meeting. I do not think so.

Had the legislature intended such a result the Act would so provide. It could have stated that all meetings conducted in violation of the provisions of this chapter are null and void. It does not do so. The section of the Act relating to enforcement is Section 2.1-346, which reads in part:

> Proceedings for enforcement of chapter. - Any person denied the rights and privileges conferred by this chapter may proceed to enforce such rights and privileges by petition for mandamus or injunction, supported by an affidavit showing good cause, addressed to the court of record, having jurisdiction of such matters, of the county or city in which such rights and privileges were so denied . . .

If a person were denied access to public records in violation of § 2.1-342, the court may compel by mandamus or injunction their access. If a public body, such as a School Board, persists in holding meetings in violation of the requirements of § 2.1-343, then the court obviously can enjoin such illegal conduct. But, in the absence of an express legislative enactment, I do not think that a court is empowered to bring a school system to a halt because one person who had requested information as to the time and place of a regular meeting of the School Board was denied such information. To grant the relief requested by the Association would result in the total disruption of the County Schools. The requested relief is therefore denied.

An annotation touching upon the validity of action taken in violation of such statutes (i.e., so called "public meeting and information" statutes) is set forth in 38 A.L.R.3d, beginning at page 1086. We have no decided cases in Virginia on this point, but in other jurisdictions, with the exception of New Jersey and Pennsylvania, the view is that such action is not invalid.

Even if all three meetings were declared null and void, this Court could not permanently enjoin the School Board "from voting on the issue of confirming any such contracts (for the employment of teachers) at a subsequent meeting of the Defendant Board on the grounds of a conflict of interest," as prayed for in the Association's petition. Such a decision by this Court would divest the School Board of its power to supervise its schools as guaranteed by Article VIII, Section 7 of the Constitution of Virginia, which reads:

> *School boards.* - The supervision of schools in each school division shall be vested in a school board to be composed of members selected in the manner, from the term, possessing the qualifications, and to the number provided by law.

This section of the Constitution, which was formerly § 133, vests in the local school board the exclusive power to supervise its schools. *Howard*

v. *School Board*, 203 Va. 55, 122 S.E.2d 891 (1961); *Kellam* v. *School Board*, 202 Va. 252, 117 S.E.2d 96 (1960); *Harrison* v. *Day*, 200 Va. 439, 106 S.E.2d 636 (1959).

I hold therefore that, notwithstanding the School Board's violation of § 2.1-343 by its failure to inform Mr. Spencer of the time and place of the June 4th meeting, the action taken by the School Board at that meeting was valid and will not be set aside by the Court. Since the June 4th meeting is valid, the question regarding the validity of the special meeting (the second one) on May 8, 1974, is now moot.

I find that the School Board is at present fully complying with all the requirements of The Virginia Freedom of Information Act, and, this being so, no relief by way of mandamus or injunction is required.

I further find that, notwithstanding the fact that the School Board violated certain provisions of the Act, its actions, and those of its individual members, were done in good faith and with their primary motive at all times being to provide for the education of the county's children. It became apparent during the trial of this case that tensions in the county have eased considerably and that good will now prevails generally among its citizens.

Counsel for the Association has moved that the School Board be required to pay his fee for services rendered his client in this case. It is only in the most unusual case that a party in a suit is required to pay the fee of the opposing attorney, and I do not think this is such a case. Accordingly, the application for an attorney's fee for petitioner's attorney to be paid by the defendant is denied. The usual cost, however, shall be borne by the defendant.