### 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

SCHOOL BOARD OF THE CITY OF RICHMOND V. MARGARET W. PARHAM, ET AL., ETC.

April 21, 1978.

Record No. 761561.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Compton, JJ.

*C. Tabor Cronk, Assistant City Attorney*, for plaintiff in error.

*Michael W. Smith; William H. Hefty (Peter E. Broadbent, Jr.; Anthony F. Troy, Attorney General; Walter H. Ryland, Assistant Attorney General; Christian, Barton, Epps, Brent & Chappell*, on briefs) for defendants in error.

CARRICO, J., delivered the opinion of the Court.

This is an appeal from the final order of the trial court awarding Margaret W. Parham (hereinafter, Parham), a Richmond public schoolteacher, a writ of mandamus against the School Board of the City of Richmond (hereinafter, the School Board). The order compelled the School Board to submit to arbitration a grievance Parham had brought pursuant to the "Procedure for Adjusting Grievances," adopted by the State Board of Education (hereinafter, the State Board). The same order awarded the State Board, an intervenor in the proceeding, a declaratory judgment upholding the constitutionality of a provision of the Procedure which requires binding arbitration of certain disputes between local school boards and their non-supervisory employees. The sole question for decision is whether the provision for binding arbitration is constitutionally valid.

Adopted in 1973 and subsequently amended, the Procedure prescribes the method for settling employee grievances. A grievance is defined as a difference or dispute concerning "the application of the provisions of the [local school board's] Policies, Rules and Regulations as they affect the work activity of [non-supervisory employees]." [1] In a step-by-step process provided by the Procedure, an employee may submit a dispute successively to the immediate supervisor, the school principal, the division superintendent, and the local school board. Failing resolution of the dispute at these levels, the employee may appeal the matter to an arbitration panel which, after a *de novo* hearing, renders a decision in the case. An arbitration panel consists of one member chosen by the employee and one selected by the school board. If these two cannot resolve the dispute, they choose a third panelist.

According to the terms of the Procedure, an arbitration panel's jurisdiction is "confined exclusively to the application of the provision or provisions of the [local school board's] Policies, Rules and Regulations at issue between the employee and the [local school board];" the panel has "no authority to add to, detract from or amend any such provision or provisions." And, in a section entitled "Board's Prerogatives," it is stated that nothing in the Procedure is intended to "circumscribe or modify" the right of the local school board to exercise eight listed functions.[2] The same section provides further, however, that should "a disagreement arise over whether a grievance concerns one or more of the [local school board's] prerogatives ... the question of the arbitrability of such grievance shall itself be a matter within the jurisdiction of the Panel described in ... this Procedure."

[1] Under the terms of the Procedure, the discharge of an employee, the failure to reappoint an employee during a probationary period, and the revocation, suspension, or denial of a teaching certificate are not subject to the Procedure.
[2] The listed functions are:
"(a) Determine and administer the mission of the school system;
"(b) Hire, promote, transfer, discipline, suspend, assign and retain employees in positions within the school system;
"(c) Maintain the efficiency of school operations;
"(d) Relieve employees from duties for legitimate reasons;
"(e) Take action as may be necessary to carry out the duties of the school system in emergencies;
"(f) Determine the methods, means and personnel by which operations are to be carried on;
"(g) Direct the work of [local school board] employees;

Lastly, the Procedure contains this pertinent provision:

"The award of the Panel on the merits of any grievance adjudicated within its jurisdiction and authority as specified herein shall be final and binding on the aggrieved employee and the [local school board] and the [local school board] hereby delegates such authority to the Panel."

In the present case, Parham unsuccessfully processed her grievance through the several administrative levels prescribed by the Procedure and ultimately presented the dispute to the School Board, where she received an adverse decision. When she called for arbitration, the School Board refused to arbitrate, stating that it questioned the constitutionality of the Procedure "insofar as it compels arbitration binding on school boards in Virginia." Parham then filed her petition for a writ of mandamus to compel the School Board to submit the matter to arbitration.

At the heart of the present controversy are the provisions of Article VIII of the Virginia Constitution, which article relates to education. In pertinent part, the article reads:

"  . . . .

"§ 2. *Standards of quality; State and local support of public schools.* — Standards of quality for the several school divisions shall be determined and prescribed from time to time by the Board of Education, subject to revision only by the General Assembly.

"  . . . .

"§ 4. *Board of Education.* — The general supervision of the public school system shall be vested in a Board of Education . . . .

"§ 5. *Powers and duties of the Board of Education.* — The powers and duties of the Board of Education shall be as follows:

"  . . . .

"(e) Subject to the ultimate authority of the General Assembly, the Board shall have primary responsibility and authority for effectuating the educational policy set forth in

"(h) Issue and revise policies, rules and regulations necessary to carry out the foregoing and all other managerial functions entrusted to and conferred upon the [local school board] by law  . . . ."

this Article, and it shall have such other powers and duties as may be prescribed by law.

"....

"§ 7. *School boards.* — The supervision of schools in each school division shall be vested in a school board . . . ."

The School Board recognizes that § 4 of Article VIII places "general supervision" of the public school system in the hands of the State Board. The School Board notes, however, that, under § 7 of Article VIII, the "supervision" of schools is vested in local school boards and that, implementing this constitutional mandate, the General Assembly has conferred upon such local boards extensive authority to execute their supervisory duties.[3] The School Board acknowledges that, within the general supervision/supervision format of §§ 4 and 7 of Article VIII, the General Assembly may "apportion various supervisory powers over the school system and schools, respectively, between the State Board and local school boards." And the School Board concedes that it must observe not only the standards of quality prescribed by the State Board, as revised by the General Assembly, but also the lawful regulations of the State Board.

The School Board argues, however, that "management of a school board's teaching staff and other employees is . . . an essential function of supervision" and that neither the General Assembly nor the State Board can divest local school boards of this function and place it "in an authority other than the local boards." Yet, the School Board asserts, the effect of the binding arbitration provision of the Procedure is to permit "an outside agency, in the form of an arbitration panel . . . to divest the local board of its essential function by the substitution of [the panel's] judgment for that of the board." As a result of the panel's action, the School Board maintains, a local school board's policies, rules,

---

[3]Under Code § 22-93, a city school board shall establish and maintain a public school system "in accordance with the requirements of the Constitution and the general educational policy of the Commonwealth." Under Code § 22-97, a city school board has the power and duty: to "explain, enforce, and observe the school laws, and to make rules for the government of the schools;" to "determine the studies to be pursued, the methods of teaching [and] the government to be employed in the schools;" to "employ teachers on recommendation of the division superintendent and to dismiss them when delinquent, inefficient or in anywise unworthy of the position;" to "visit the . . . schools . . . and to take care that they are conducted according to law, and with the utmost efficiency;" and to "perform such other duties as shall be prescribed by the State Board or are imposed by other parts of this title."

and regulations relating to the work activity of employees could be altered or rendered meaningless. This, the School Board concludes, is constitutionally impermissible under § 7 of Article VIII.

On the other hand, Parham and the State Board contend that the constitutionality of the Procedure should be upheld as a standard of quality enunciated pursuant to § 2 of Article VIII. These parties contend also that the Procedure is constitutionally valid as a rule or regulation adopted pursuant to the general supervisory power of the State Board vested by § 4 and the ultimate authority of the State Board to effectuate the educational policy of the state granted by § 5(e). Furthermore, it is asserted, the General Assembly not only has conferred upon the State Board full authority to adopt the Procedure either as a rule or regulation or as a standard of quality [4] but also has itself "enacted" or "ratified" the Procedure.[5] As a result of this legislative action, it is maintained, the Procedure is entitled to a presumption of constitutional validity.

---

[4]Under Code § 22-19, the State Board may "make rules and regulations not inconsistent with law for the management and conduct of schools" and, except as provided in § 22-19.1, such rules and regulations "shall have the force and effect of law." Under § 22-19.1, the State Board is directed to submit to the General Assembly periodic reports containing the standards of quality "to be prescribed in the future" for school divisions. The standards, subject to revision by the General Assembly, shall be effective for periods specified in the statute.

[5]Acts 1973, ch. 311, provided that "the standards of quality for public schools in Virginia, as determined and prescribed by the Board of Education, are revised" as follows:
". . . .
"3. Guidelines for Teacher-Administrator-School Board Relationships:
"a. The School Board of each school division shall adopt the procedure prescribed by the Board of Education for adjusting grievances."
Acts 1974, ch. 316, revised the standards of quality adopted by the State Board effective July 1, 1974, as follows:
". . . .
"9. Policy Manual. Each school division shall maintain an up-to-date policy manual which shall include:
"a. The grievance procedure prescribed by the Board of Education . . . ."
Acts 1976, ch. 714, revised the standards of quality adopted by the State Board effective July 1, 1976, as follows:
". . . .
                    "10 - POLICY MANUAL
"Each school division shall maintain an up-to-date policy manual which shall include:
"1. A grievance procedure prescribed, and amended from time to time as deemed necessary, by the Board of Education . . . ."

The Procedure, Parham and the State Board argue, does not divest a local school board of any of its powers of supervision; the Procedure preserves the local board's authority to make its own policies, rules, and regulations and to administer the mission of the schools. The Procedure, it is asserted, comes into effect only after the local board has exercised its supervisory powers, and even then the Procedure amounts to no more than a "device" with which to contest a misapplication of a policy, rule, or regulation.

In analyzing the arguments of Parham and the State Board, it is interesting to note that neither of these parties specifically defends the binding arbitration provision of the Procedure; the arguments merely assert the validity of the Procedure in general. The closest approach to a defense of the provision is a statement that "the arbitration panel has no authority whatsoever to make or enforce any decisions as to how the local school is to be operated." This merely evades, rather than answers, the School Board's contention that the arbitration provision permits "an outside agency, in the form of an arbitration panel ... to divest the local board of its essential function [of managing its teaching staff] by the substitution of [the panel's] judgment for that of the board."

■ This contention of the School Board presents the real question in the case, *viz.*, whether the binding arbitration provision of the Procedure produces an unlawful delegation of power. In resolving this question, we will assume the correctness of the position stated by Parham and the State Board that the General Assembly, by its revision of standards of quality in 1973, 1974, and 1976 (note 5), "enacted" or "ratified" the Procedure. And, based upon this assumption, we will accord the Procedure a presumption of constitutional validity. But the presumption would be unavailing against a finding that the Procedure results in an unlawful delegation of authority.

■ There can be no doubt that *a* delegation of power is involved in the binding arbitration provision. Indeed, the very section of the Procedure which provides that an arbitration panel shall have authority to make a final and binding decision also states that the local school board "hereby delegates such authority to the Panel."

■ Whether, however, the arbitration provision results in an *unlawful* delegation of authority is a more difficult question.

Previously, we have encountered binding arbitration provisions concerning public school employees only as part of collective bargaining agreements entered into by a local school board and certain labor organizations. In *Commonwealth* v. *Arlington County Board*, 217 Va. 558, 232 S.E.2d 30 (1977), we held, *inter alia*, that, because the power to enter into collective bargaining agreements was not indispensable to the discharge of the functions of a local school board, we could not imply such authority from the power of supervision vested by § 7 of Article VIII of the Constitution. Having determined, in the final analysis, that the local board possessed neither constitutional nor statutory authority to enter into the agreements, we stated specifically that we did not reach the question whether the agreements produced an unlawful delegation of power.

Although not involving binding arbitration provisions, *Howard* v. *School Board of Alleghany County*, 203 Va. 55, 122 S.E.2d 891 (1961), is pertinent to resolution of the present case. There, a state statute required the sale of school property if such disposition was favored by a majority of voters in a referendum. Ruling the statute invalid, we said that it was an "essential function" of a local school board's power of supervision, granted by what is now § 7 of Article VIII of the Constitution, "to determine whether a particular property is needed for school purposes and the manner in which it shall be used." The effect of the disputed statute, we stated, was "to divest the board of the exercise of that function and lodge it in the electorate," thus stripping the board "of any or all authority to exercise its judgment in the matter." 203 Va. at 58, 122 S.E.2d at 894. This is but another way of saying that the statute produced an unlawful delegation of power.

We believe the binding arbitration provision involved in the present case has the same effect as the offending statute in *Howard*, *viz.*, to remove from a local school board and transfer to others a function essential and indispensable to the exercise of the power of supervision vested by § 7 of Article VIII. The function involved here concerns the application of local policies, rules, and regulations adopted for the day-to-day management of a teaching staff. Clearly, in the Article VIII general supervision/supervision allocation of powers between the State Board and local school boards, this function is vested in the local boards. It would be wholly unrealistic to say that Article VIII

was designed to inject the State Board directly into the daily management of a local teaching staff. Recognizing this proposition and implementing § 7 of Article VIII, the General Assembly has placed the management of local teaching staffs in local school boards. (See note 3 and Code § 22-72).

Equally clear, the function of *applying* local policies, rules, and regulations, adopted for the management of a teaching staff, is a function essential and indispensable to exercise of the power of supervision vested by § 7 of Article VIII.[6] This power of supervision would be an empty one, indeed, if a local school board, once having adopted a valid policy, rule, or regulation, found itself powerless to enforce what it had promulgated.

In the present case, no question is raised concerning the validity of the policy adopted by the School Board and disputed by Parham. No complaint is made that, in adopting the policy, the School Board exceeded its authority in any way. Nor is it claimed that the policy conflicts with law or is contrary to any standard of quality or rule or regulation adopted by the State Board.[7]

Yet, the binding arbitration provision of the Procedure denies the School Board the right to decide upon the ultimate application of the policy. The provision effectively divests the School Board of a function indispensable to its § 7 power of supervision and transfers to an arbitration panel the authority to make a final and binding decision upon the application of the policy.

---

[6]The School Board requests us to abandon the "essential-indispensable function" test employed in *Howard* and *Arlington County Board* in favor of an approach which recognizes that § 7 of Article VIII encompasses any function, "essential . . . or otherwise," related to the supervision of schools. Because, however, we are satisfied that the function involved here is essential and indispensable, we need not consider the request in this case.

[7]Citing *DeFebio* v. *County School Board of Fairfax County*, 199 Va. 511, 100 S.E.2d 760 (1957), *appeal dismissed*, 357 U.S. 218 (1958), Parham argues that the Constitution "does not define 'supervision' to include the right of a local school board to enact a grievance procedure only according to its wishes" or to allow "local school boards to ignore a grievance procedure adopted by the State Board." We fail to see the relevance of this argument. Aside from the fact that the School Board does not assert the right "to enact a grievance procedure only according to its wishes," the School Board did not ignore the Procedure but refused to arbitrate Parham's grievance only because it questioned the constitutionality of the binding arbitration provision of the Procedure. Today's decision vindicates the School Board's position.

We conclude, therefore, that the binding arbitration provision of the Procedure produces an unlawful delegation of power, violative of § 7 of Article VIII of the Constitution. In reaching this conclusion, we have not been unmindful of the authority placed in the State Board by other portions of Article VIII or of the rule that all parts of the Constitution should be harmonized to effectuate the intention expressed within the four corners of the instrument. The several provisions of Article VIII would not be harmonized, however, by an interpretation which would so magnify the authority of the State Board that, as a result, the § 7 power of local supervision would be rendered meaningless. Our conclusion with respect to the binding arbitration provision of the Procedure avoids such a result in the present case.

Accordingly, the judgment of the trial court will be reversed, Parham's petition for a writ of mandamus will be dismissed, and final judgment will be entered here declaring the binding arbitration provision of the Procedure constitutionally invalid.

*Reversed and final judgment.*