## CIRCUIT COURT OF HENRICO COUNTY

John Denzler

v.

Henrico County School Board

August 24, 1984

Case No. 84-C-848

By Judge E. Ballard Baker

John Denzler seeks to enjoin the Henrico County School Board from deciding the issue of whether he should be terminated from his employment as a Henrico County teacher and also asks the Court to order that he cannot be dismissed for failing to take a polygraph test ordered by the Superintendent of Schools, Dr. William Bosher, Jr.

By letter of June 21, 1984, Dr. Bosher wrote to Denzler referring to his suspension from duties as a Varina High School teacher and directing him:

> to take an administrative polygraph examination . . . prior to June 27, 1984. This examination will be conducted in accordance with all standard procedures and regulations governing polygraph examinations and will be directed to questions concerning your job performance. Should you refuse to take the polygraph examination, your refusal will be viewed as insubordination and as a basis for your dismissal as a School Board employee.

Denzler did not take the polygraph. On June 29, Dr. Bosher advised Denzler he was recommending his dismissal.

Pursuant to the statutory grievance procedure, Denzler asked to proceed with the three-person panel under § 22.1–312 of the Virginia Code. Under the grievance procedure, this panel is advisory only, its recommendation going to the School Board where the final decision

is made based on that report and such further evidence the Board may receive.

Denzler objects to the School Board making the final decision because "a School Board member was going to be a witness against him." He further contends that the Superintendent's recommendation that he be terminated because, among other things, he refused to take the polygraph examination, violates his constitutional rights.

The specific prayers are:

(1) The School Board be enjoined from deciding whether Denzler should be terminated;

(2) The decision on termination be made by the three-person fact-finding panel;

(3) The Court order that the allegations that Denzler can be dismissed for failing to take a polygraph examination is a violation of his federal constitutional rights.

### The Making of the Decision

In *School Board v. Parham*, 218 Va. 950 (1978), the Supreme Court pointed out that Article VIII, section 7, of the Constitution of Virginia places the supervision of schools in each division in the school board and that this section "has placed the management of local teaching staffs in local school boards."

Section 22.1–313 is a statutory implementation of this provision and provides that "The school board shall retain its exclusive final authority over matters concerning employment and supervision of its personnel, including dismissals, suspensions and placing on probation."

Denzler asks the Court to disregard this and have the three-person panel authorized by § 22.1–312 make the decision. Section 22.1–312 provides that the panel makes "recommendations and findings of fact . . . ." These are submitted to the school board which makes the final decision under § 22.1–313.

This Court would have to act legislatively to do what Denzler asks. This it cannot do.

Denzler's position is based on an allegation that one member of the five-member School Board may be a witness against him, and whether he be so or not, the presence on the Board of a person considered a possible witness against him denies him due process.

The School Board asserts that this member will not participate in the meeting as a Board member. Under § 22.1–73, a majority of the

members constitutes a quorum; so the Board can legally function with one member absent. To disqualify the other members of the Board from performing their statutory duty because of one member's position when that one member will not participate as a Board member is to say that the other members will not comply with the oath they have taken and will not fairly and objectively decide the issue. This Court will not say that and will not enjoin the School Board from performing its function.

### The Polygraph Requirement

Denzler contends that the polygraph is an unreliable device and that Dr. Bosher's directive that he submit to a polygraph is an improper invasion of his right to privacy.

While Virginia does not permit the use of a polygraph as evidence in a criminal trial, use of the polygraph in other areas is not unknown. In *Overstreet v. City of Roanoke* (W.D. Va. 1981), decided by Judge Turk in the United States District court for the Western District of Virginia in July, 1981, an accountant in the Department of Finance was dismissed because of the results of polygraph tests. He argued, as does Denzler, that polygraph examinations are not scientifically reliable methods of determining the truth. While Judge Turk did not discuss that contention, it is significant on the issue of reliability to note that a Virginia Department of Commerce Regulation involved provided for the use of a polygraph.

Also significant on reliability is the fact that § 40.1-51.4:3 recognizes the use of a polygraph test for employment but provides that certain questions cannot be asked as a condition of employment.

In 1975, the Circuit Court of the City of Portsmouth permitted the use of a polygraph in an administrative proceeding involving a public employee. *Salos v. City of Portsmouth* (1975).

An annotation at 15 A.L.R. 4th 1207 on "Refusal to submit to polygraph examinations as a ground for discharge or suspension of public employees or officers" discusses a number of cases on this subject. In the great majority of cases, the use of the polygraph was upheld, and in no case was it held improper solely because of unreliability.

There is nothing presented to this Court which supports a holding that a polygraph is so unreliable that its use in an administrative proceeding relating to employment violates due process rights.

There remains the issue of privacy. Denzler recognizes that the use of polygraph tests involving police officers has been held not to violate privacy rights. The nature of the employment justifies the use of the polygraph directed at questions relevant to employment. The Annotation at 15 A.L.R. 4th cites a number of cases upholding the polygraph with respect to law enforcement officers. The Annotation also cites four cases involving other than law enforcement officers: a correctional officer, a town sewer and water maintenance man, a city automobile mechanic, and a city fireman. Dismissal of the correctional officer and the sewer and water maintenance man was upheld; dismissal of the mechanic and fireman was found to be improper, but it appears that in each of these two cases, a polygraph test concerning work-related conduct or subjects would not have been improper.

*Overstreet v. City of Roanoke, supra,* did not involve a law enforcement officer.

Denzler relies on the West Virginia case of *Cordle, et al. v. General Hugh Mercer Corporation* in which the West Virginia Supreme Court held it was contrary to public policy to require an employee to submit to a polygraph test as a condition of employment. The Court found that West Virginia had a public policy contrary to requiring an employee to take a polygraph test. At the time of the decision, the West Virginia legislature had adopted a statute which would have prohibited the polygraph tests the employees in *Cordle* were fired for not taking. The Court did not rely on that statute but stated that "we perceive that statute to be the embodiment of a 'recognized facet of public policy' in this State."

The West Virginia statute makes an exception with respect to law enforcement agencies and two other groups but not school teachers.

This Court finds no public policy in Virginia against use of polygraph examinations. Section 40.1–51.4:3 seems to be the only legislative expression on the subject. It recognizes the use by employers of polygraph tests as a condition of employment but makes questions relative to sexual activities improper.

The reasons which support polygraph tests for law enforcement officers seem applicable here. Police as guardians of security and peace are subject to polygraph tests to assure that they faithfully perform the trust reposed on them. Public policy supports the use of the polygraph in this highly important area, and a person employed as a police officer cannot complain of invasion of privacy rights

when job-related questions are put to him in a polygraph test. His work, his function, is too important to deny to the public the privilege of questioning him by polygraph as to the performance of his job.

School teachers have an important role to play in our society. The youth of the community are placed in their care for education and training for a substantial period of time. The public has a right to know how a teacher performs his or her job. The polygraph, as a means of aiding in discovering the truth, is a tool which should not be denied administrators on whom the responsibility of running the public school system is placed. To the extent that a polygraph invades a privacy right, a public school teacher, like a police officer, cannot complain of questions put to him related to how he performs the trust given to him, the education and training of youth.

The prayers in the Bill of Complaint will be dismissed upon presentation of an Order in accord.