## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Spotsylvania County School Board

v.

Sherman Construction Corp. and
Seaboard Surety Co.

Case No. C-88-581

Spotsylvania County School Board

v.

Seaboard Surety Co.

Case No. C-88-633

February 16, 1989

By JUDGE WILLIAM H. LEDBETTER, JR.

The question to be decided is whether a local school board has the power to commit itself to binding arbitration in a construction contract.

The Spotsylvania County School Board and Sherman Construction Corporation entered into a contract dated May 14, 1987, for the construction of Courtland Elementary School. A provision in the general conditions of the contract binds the parties to arbitrate disputes arising under the contract.

Seaboard Surety Company provided Sherman's performance bond.

In May of 1988, the School Board terminated its contract with Sherman because of Sherman's alleged failure to fulfill its obligations under the contract. Seaboard agreed to take over the work and signed a "take over

agreement" with the School Board. The School Board terminated that contract on November 30, 1988.

Sherman and Seaboard filed demands for arbitration with the American Arbitration Association. The School Board seeks to enjoin those proceedings.

The work under the construction contract has not been finished.

## Pleadings

The School Board filed a bill for declaratory and injunctive relief (C-88-581) asking the court to declare that the dispute cannot be arbitrated. After the bill was amended, the defendants filed responsive pleadings. The parties agreed to stipulate 12 facts, mostly related to the contract documents, and the stipulation was filed on January 25, 1989. The School Board moved for summary judgment, addressing the issue of arbitration.

On December 6, 1988, the School Board filed a second bill (C-88-633), seeking, inter alia, compensatory and punitive damages against Seaboard in connection with the construction project. Seaboard demurred and filed a plea in bar. The School Board filed a motion for partial summary judgment, again addressing the issue of arbitration.

All parties have favored the court with exhaustive memoranda. Arguments were heard on February 6, 1989.

## Authorities

Article VIII, § 7, of the Constitution of Virginia vests the supervision of public schools in local school boards, each composed of members chosen in one of the manners provided by law. In implementing this constitutional scheme with respect to educational matters, the General Assembly has declared that every school board is "a body corporate and, in its corporate capacity, is vested with all powers and charged with all duties, obligations, and responsibilities imposed upon school boards by law and may sue, be sued, contract, be contracted with, and . . . purchase, take, hold, lease, and convey school property, both real and personal." Virginia Code § 22.1-71. Local school boards have the statutory duty to "care for, manage, and control the property of the school division and provide

for the erecting, furnishing, and equipping of necessary school buildings and appurtenances and the maintenance thereof . . . ." Virginia Code § 22.1-79(3). (*See generally* Chapter 7 of Title 22.1 of the Virginia Code.)

Whether these constitutional and statutory powers include the power to agree to arbitrate labor disputes was discussed in *Commonwealth v. Arlington County Board, et al.*, 217 Va. 558 (1977). There, a local school board entered into collective bargaining contracts with three labor organizations. The trial court reviewed the granted powers of local school boards and found that such agreements were "impliedly authorized." The Supreme Court disagreed.

First, the Court said that the agreements were collective bargaining agreements, not just "meet and confer" arrangements, which granted to the labor organizations "a substantial voice in the [school board's] ultimate right of decision in important matters affecting both the public employer-employee relationship and the public duties imposed by law upon the [school board]."

Second, applying the Dillon Rule of strict construction concerning powers of local public bodies, the Court found no granted or implied power to permit collective bargaining by local school boards with labor organizations. Since everyone acknowledged that no constitutional or statutory provision expressly conferred such power on local school boards, the Court explained that it was concerned with the question of implied power.

"Always," the Court said, "the test in application of the doctrine [of implied powers] is reasonableness, in which concern for what is necessary to promote the public interest is a key element."

In refusing to find an implied power under this test, the Court stated:

> To imply the contended for authority would constitute the creation of a power that does not exist, or, at least, the expansion of an existing power beyond rational limits. To sanction the method of exercising authority which the boards have selected in this case, even giving the selection the benefit of any doubt, would result in an unreasonable and strained application of the doctrine of implied powers. To approve

the actions taken in this case would ignore the lack of any support for the proposition that collective bargaining by the [local school board] is necessary to promote the public interest. And, finally, but not least important, to imply the power asserted . . . would be contrary to legislative intent. 217 Va. 558, 578.

The power of local school boards to arbitrate disputes was again discussed in *School Board of the City of Richmond v. Parham*, 218 Va. 950 (1978). In that case, a Richmond teacher obtained in the trial court a writ of mandamus to compel the school board to arbitrate a grievance she had brought under a written grievance procedure adopted by the State Board of Education for local school divisions. In reaching its decision to issue the writ, the trial court upheld the constitutionality of the grievance procedure, one provision of which required binding arbitration of certain disputes between local school boards and their teacher-employees.

The Supreme Court reversed. The Court pointed out that policy making regarding general supervision and day-to-day management of teaching staff is clearly vested in local school boards, not in the State Board which adopted the grievance procedure in question. The Court's decision went further, concluding that "the binding arbitration provision of the [grievance procedure] produces an unlawful delegation of power, violative of § 7 of Article VIII of the Constitution." This is so, the Court explained, because the offending provision of the procedure would remove from a local school board and transfer to others "a function essential and indispensable to the exercise of the power of supervision vested by § 7 of Article VIII" -- specifically, "the application of local policies, rules, and regulations adopted for the day-to-day management of a teaching staff."

The School Board relies upon *Arlington County* and *Parham* in support of its position that a local school board has no power to agree to binding arbitration. The defendants contend that these cases do not stand for such a broad proposition. In *Parham*, they suggest, the Court was primarily concerned with defining the division of

power between the State Board of Education and local school boards, and the *Arlington County* case merely invalidated collective bargaining agreements affecting public employees.

The School Board also cites *Deal v. Commonwealth*, 224 Va. 618 (1983), in which the Court held that agents of the Commonwealth cannot bind it to arbitration. Because the General Assembly has not authorized agents and officers of the Commonwealth to submit contract disputes to binding arbitration, such acts are ultra vires and void, the Court ruled.

Sherman and Seaboard cite *McKennie v. Charlottesville and Albemarle Railroad Co.*, 110 Va. 70 (1909), in which the Court decided that a municipal corporation may settle and adjust disputed claims and, consequently, may submit such claims to binding arbitration. The Court found such procedure to be a "necessary incident" to a municipal corporation's "right to contract" and "to sue and be sued."

The defendants also cite *Sydnor Pump and Well Co. v. Henrico County School Board*, 182 Va. 156 (1943). There, the Court set aside an arbitration award because the arbitrators misunderstood the issue submitted to them but did not question the school board's power to enter into the arbitration agreement in the first place.

On this issue, decisions among the circuit courts are in conflict. Sherman and Seaboard emphasize *Spotsylvania County School Board v. R. E. Lee & Son, Inc.* (Spotsylvania County Circuit Court, April 8, 1982), in which this court upheld the school board's authority to enter into a construction contract containing an arbitration clause. The School Board argues that the better view is represented by *Hanover County School Board v. Gould* (Hanover County Circuit Court C-23-1984, April 4, 1984), in which the court, relying upon *Parham*, held that a school board lacks authority to enter into a construction contract with an arbitration clause. The School Board also cites *Chesterfield County v. Rahman Construction Corporation* (Chesterfield County Circuit Court C-7653-81, December 29, 1981), and *Arlington County v. Savoy Construction Co., Inc.* (Arlington County Circuit Court C-31992-81, December 15, 1981), both of which held that county governing bodies lacked

authority to agree to binding arbitration of contract disputes.

Based on the foregoing review of the cases, it is clear that decisional law is in disarray. *McKennie* has never been overruled or distinguished. The Court has not addressed the distinctions, if there are any, between the powers of municipal corporations, counties, and school boards to arbitrate contract disputes. Nevertheless, the cases are helpful guides to the appropriate application of doctrines and principles regarding the issue of contract dispute arbitration.

Turning from case law to legislation, the School Board argues that two statutes are especially pertinent to this inquiry.

First, the School Board points to the 1987 amendment to § 15.1-508, which grants to counties the authority to execute contracts which contain arbitration clauses. This legislative action, the School Board says, demonstrates the General Assembly's recognition that no such power previously existed; and, further, it is significant that the General Assembly did not amend § 22.1-71 in a similar fashion to give such power to school boards.

Second, the School Board cites the Public Procurement Act (§ 11-35 et seq.) enacted in 1982. Local school boards are covered by the Act. The Act sets forth the manner in which disputes arising out of contracts for the procurement of goods and services are to be handled.

## Decision

In *Arlington County*, the Court said that to find an implied power of the school board to agree to collective bargaining would expand granted powers "beyond rational limits" and would be an inappropriate application of the doctrine because it would require the Court to hold that such activity is "necessary to promote the public interest" and consistent with "legislative intent." In *Parham*, the Court emphasized that the action of the school board improperly transferred or delegated an essential function of the school board -- i.e., its general supervision and management responsibilities.

In the context of a construction contract dispute, what powers can be implied from the granted powers with

regard to a school board's commitment to arbitrate? What "essential function" of a school board is transferred or delegated by such a commitment?

Against the backdrop of the principles enunciated in *Arlington County*, *Parham*, and *Deal*, the Public Procurement Act provides the answer.

Pursuant to the Act, contract disputes are to be submitted to the school board, which shall make a decision regarding the claim. § 11-69(A), (B), and (C). That decision shall be "final and conclusive" unless the contractor appeals. § 11-69(D). The contractor can appeal "by invoking administrative procedures meeting the standards of Section 11-71, if available," or, in the alternative, "by instituting legal action as provided in § 11-70 . . . . Section 11-70(E) provides that "a contractor may bring an action involving a contract dispute with a public body in the appropriate circuit court."

(It is undisputed that the School Board has not adopted administrative procedures meeting the standards of Section 11-71.)

Nowhere in the Act is any public body authorized to resolve these contract disputes by submitting to binding arbitration; and no other statute (such as § 15.1-508, applicable to counties) allows school boards to submit these contract disputes to binding arbitration.

At least since 1982, then, the contention that local school boards possess an implied power to submit construction contract disputes to binding arbitration clashes with the express provisions of the Act, or, at the very least, calls for an expansion of granted power "beyond rational limits."

As noted above, the Act provides for contract claims to be submitted to the school board, and, insofar as is pertinent here, an appeal of the school board's decision is taken by *instituting legal action in the appropriate circuit court.* From this statutory scheme of dispute resolution, one is hard-pressed to find any legislative intent to imply the authority to submit such disputes to a non-judicial tribunal for determination.

Further, the Act bestows upon local school boards the responsibility to consider and decide contract claims. The decision of that body is "final and conclusive" unless the contractor appeals by timely resort to one of the

codified procedures. Thus, with the enactment of the Public Procurement Act, school boards have been given another duty: to consider and decide contract claims. This is an "essential function" which it cannot delegate or transfer to another. To transfer the entire dispute resolution process to binding arbitration would constitute an impermissible delegation of the school board's right of decision in important matters affecting the public duties imposed by law upon it and would be contrary to legislative intent.

## Conclusion

For the foregoing reasons, the court is of the opinion that the School Board does not have the power to agree to binding arbitration for the resolution of construction contract disputes. It is well settled that if a public body engages in an act beyond the scope of its powers, such act is void ab initio, and the public body cannot be estopped to assert the invalidity of its action, even if, in the first instance, it willingly and knowingly agreed to do the thing which it is prohibited by law from doing. *See Deal, supra.*

Therefore, the court will declare that the arbitration clause of the contract is void ab initio, and the parties will be enjoined from proceeding with arbitration.