## Richmond

THE COUNTY SCHOOL BOARD OF FLUVANNA COUNTY, VIRGINIA V.
EDITH H. FARRAR, COUNTY TREASURER, FLUVANNA COUNTY,
VIRGINIA, PALMYRA, VIRGINIA.

October 14, 1957.

Record No. 4752.

Present, All the Justices.

The opinion states the case.

*John S. Battle, Jr. (Perkins, Battle & Minor*, on brief), for the petitioner.

*T. Justin Moore* and *Ralph P. Zehler, Jr. (Archibald G. Robertson; Harry Frazier, III; Hunton, Williams, Gay, Moore & Powell*, on brief), for the respondent.

Hudgins, C. J., delivered the opinion of the court.

This opinion is published pursuant to the reservation made in an order entered on September 6, 1957, at the Staunton session of the Court, wherein Edith H. Farrar, Treasurer of Fluvanna county, was ordered to pay out of the proceeds of a $750,000 bond issue all legitimate and proper warrants issued, and to be issued, by the County School Board of Fluvanna County for the construction of a new consolidated Negro elementary school building.

The question presented is whether the School Board, or the Board of Supervisors of Fluvanna county, has the authority to disburse $750,000, the proceeds from the sale of bonds for school construction and improvement.

The bonds were authorized, issued and sold in compliance with the provisions of the Public Borrowing Law of 1952, Article 3.1, Code, §§ 15-605.1 to 15-605.13, inclusive.

There is no substantial conflict in the pertinent evidence, which may be stated as follows: Early in 1956 the School Board, with the approval of the Board of Supervisors, acquired a 20-acre tract of land near Abram's Colored High School for the purpose of erecting thereon a new consolidated Negro elementary school. Thereafter, the Board of Supervisors, acting on a resolution of the School Board (Code, § 15-605.4) obtained an order from the circuit court of the county authorizing an election (Code, §§ 15-605.5 and 15-605.6) to take the sense of the qualified voters on the following question: "Shall debt be contracted and bonds of the aggregate principal amount of $750,000 be issued by Fluvanna County for the purpose of purchasing sites for school buildings or additions to school buildings, constructing new school buildings or additions to existing school buildings, furnishing and equipping school buildings or additions to school buildings, and erecting and equipping buildings for the storage, care and repair of school buses, such bonds to be payable at such time, not exceeding thirty years after their date, as the Board of Supervisors prescribe?"

The electors of the county approved the issuance of the bonds by a vote of 678 to 218.

The Board of Supervisors, pursuant to a resolution adopted by the School Board (Code, § 15-605.7) sold the bonds, which were purchased by the National Bank and Trust Company of Charlottesville, Virginia. The proceeds of the sale were delivered to the county treasurer, Edith H. Farrar, and deposited by her in the Palmyra

Branch of National Bank and Trust Company of Charlottesville, to the account of "Fluvanna County, Virginia, County School Construction Fund and Edith H. Farrar, Treasurer."

After the bonds had been sold and the proceeds received and deposited, the School Board with the knowledge of the Board of Supervisors, and with the approval of the State Board of Education adopted plans and specifications for a new school for Negroes to be erected on the land previously acquired. The School Board advertised for bids, for the construction of the building, to be opened on May 2, 1957.

Before the bids were opened the Honorable Ralph T. Catterall, a member of the State Corporation Commission, made a public announcement to the effect that the Commission contemplated a change in the method of assessing the property of public service corporations. This proposal was, and is, that the State Corporation Commission abandon its present method of assessing such property at 40 percent of the original cost less depreciation, and adopt a plan of assessing such property for tax purposes at the same ratio at which other property is assessed in each city and county of the State.

Fluvanna is a small county with an area of 282 square miles and a population of 7,021. Most of its population is engaged in farming with little privately owned taxable wealth. Virginia Electric and Power Company maintains a large generating plant at Bremo Bluff, within the county, which together with smaller properties of other public service corporations supplies approximately two thirds of the local tax revenue. In addition, Virginia Electric and Power Company has under construction a $23,000,000 addition to its plant at Bremo, the taxes on which the Board of Supervisors contemplated would add $165,000 in annual revenue to the county, if that plant were assessed for tax purposes at a ratio of 40 percent of its cost less depreciation.

Faced with a prospective annual loss of approximately $180,000 in local revenue due to the proposed assessment plan of the State Corporation Commission, the Board of Supervisors on May 10, 1957 passed a resolution directing that the entire bond proceeds be deposited at three percent interest for twelve months, beginning as soon as possible consistent with commitments already made by the School Board, and directing the treasurer not to honor any other warrants drawn by the School Board until authorized by a "further resolution by the Board of Supervisors."

The School Board was advised by the Attorney General in a letter dated May 22, 1957 that it, and not the Board of Supervisors, was authorized "to sign checks and issue warrants drawn against these funds" for school construction. Two days later, on May 24, 1957, the School Board accepted the bid of English Construction Company to construct the elementary school for $519,740.00, as per the plans and specifications set forth in the advertisement for bids. Thereafter, the School Board drew a warrant upon the school construction fund payable to the Charlottesville Stone Corporation for $24.00 in payment for stone to be used in constructing the new school building. The payment of this warrant was refused by the treasurer who notified the School Board that she would not honor any warrants drawn by it upon the school construction fund, unless so ordered by the Board of Supervisors. Thereupon, the School Board instituted this proceeding by filing a petition in this Court praying that a writ of mandamus be issued against Edith H. Farrar, treasurer of Fluvanna county, compelling her to honor the above warrant for $24.00 and all other warrants issued by the School Board for the legitimate and proper cost of the construction of the school building. On motion, the Board of Supervisors was given leave to intervene and file an answer. Depositions on the issues raised were taken and filed.

The Board of Supervisors contends that it, and it alone, as the governing body of the county has, and always has had, control over all local finances; that before it agreed to act on the resolution of the School Board requesting it to petition the circuit court for an election to be held on the bond issue, it made a careful examination of the then financial condition of the county, and in so doing obtained from the State Corporation Commission an estimate as to the amount of increased revenue the county would receive from the new addition to the plant of Virginia Electric and Power Company at Bremo, now under construction. As a result of this investigation, the Board of Supervisors concluded that the county was fully able, without increasing taxes, to pay the bonds proposed to be issued for the construction of the new school building, and for this reason recommended the approval of the bond issue to the electors of the county. But after the sale of the bonds and before any bid had been accepted, the Catterall proposal was published. It is claimed that this proposal, if adopted, would have a disastrous effect upon the county revenues, as the county would suffer an annual revenue loss of

$180,000, and 20 percent of the county landowners would lose their property because they would not be able to pay the necessary increase in taxes to discharge the bonds and interest as they mature.

The reasons upon which the Board of Supervisors acted in adopting the resolution of May 10, 1957, are not determinative of the legal question presented.

The Board of Supervisors further contends that it has the right to control and invest the proceeds from the sale of school bonds for a period of at least 18 months under the provisions of Code, § 15-605.10. That section provides as follows:

"*Pending the application of the proceeds of any bonds* authorized under the provisions of this article *to the purpose or purposes for which such bonds have been authorized, all or any part of such proceeds may be invested,* upon resolution of the governing body of the county authorizing such bonds, in securities that are legal investments under the laws of the Commonwealth for public sinking funds, which shall mature, or which shall be subject to the redemption by the holder thereof at the option of such holder, not later than eighteen months after the date of such investment. *Any security so purchased as investment of the proceeds of such bonds shall be deemed at all times to be a part of such proceeds, and the interest accruing thereon and any profit realized from such investment shall be credited to such proceeds.* Any security so purchased shall be held by the treasurer of the county as custodian thereof and shall be sold by the county treasurer upon resolution of the governing board of the county directing such sale, at the best price obtainable, or presented for redemption, whenever it shall be necessary, as determined by such resolution, so to do in order to provide moneys to meet the purposes for which the bonds of the county shall have been authorized." (Italics supplied).

It will be noted that the first sentence of this statute is applicable to the proceeds of the sale of all bonds issued and sold under the Public Borrowing Law of 1952, for all purposes stated in Code, § 15-605.3. The only purpose of the bond issue now under consideration was to obtain money for the construction of school buildings and other improvements to the schools of the county. The Board of Supervisors is given no power to determine when or how much of the proceeds should be disbursed for this ultimate purpose. Code, § 15-605.10, considered with the other sections of the Public Borrowing Law of 1952, simply gives the Board of Supervisors the right to make temporary investments of the proceeds of any bond

issue under Article 3.1 until such time as the funds may be needed for the purpose for which authorized, to be determined by the authority having the right to make the expenditure. The last sentence of that section merely makes the treasurer of the county the custodian of the funds, with the exclusive power and authority in the governing body to buy or sell securities within the limitations enumerated.

The School Board contends that it, and it alone, has the exclusive authority to disburse the $750,000, proceeds of the school bond issue approved by the electors; that in its opinion the need for the erection of the new school building is urgent, and that the county will save $20,000, or more, by accepting the bid of the English Construction Company.

There is no provision in the Public Borrowing Law of 1952 expressly authorizing either the Board of Supervisors or the School Board to disburse any part of the proceeds from the bond issue for the purposes for which authorized. Therefore, it becomes necessary to determine from the Constitution and pertinent statutes that deal specifically with the authority of the School Board over school property and school bonds, which of the two bodies has the authority to disburse the funds.

Section 133 of the Constitution provides that the supervision of schools in each county shall be vested in a school board. The pertinent provisions of § 136 of the Constitution provide that: "Each county * * * is authorized to raise additional sums by a tax on property * * * not to exceed in the aggregate in any one year a rate of levy to be fixed by law, to be apportioned and expended by the local school authorities * * * in establishing and maintaining such schools as in their judgment the public welfare may require; * * *. The boards of supervisors of the several counties, * * * shall provide for the levy and collection of such local school taxes."

Code, § 22-72 provides in part: "The School Board shall have the following powers and duties: * * * (6). To provide for the erecting, furnishing, and equipping of necessary school buildings and appurtenances and the maintenance thereof."

Code, §§ 22-73 through 22-78 provide the procedure by which the School Board must issue warrants in disbursing school funds. Code, § 22-73 directs the School Board to receive and audit all claims arising from commitments made pursuant to the provisions of Code, §§ 22-71 through 22-78, and by resolution to approve and issue warrants on the county treasurer in settlement of such claims as are found

to be valid. The pertinent part of the latter section is as follows: "The school board may provide, by resolution, for the drawing of special warrants on the county treasurer, payable out of the school funds * * * (3) for payment on contracts for school construction projects according to the terms of such contracts."

Code, § 15-253 provides in part that: "The board of supervisors shall receive and audit all claims against the county except those required to be received and audited by the county school board, * * *."

It appears that after the bonds have been issued, sold and the proceeds received, the only control the Board of Supervisors has over the proceeds is, that it may, under Code, § 15-605.10, temporarily invest the same until the time the proceeds are needed for the purpose for which the bonds were issued. The Board of Supervisors has no authority either to expend such proceeds or to prohibit the School Board from expending the same for a legitimate and proper purpose.

For these reasons the prayer of the petition for a writ of mandamus was granted.

*Writ of mandamus awarded.*

EGGLESTON, J., concurs in result.