# Linda Underwood

## v.

# Henry County School Board

Record No. 920549

February 26, 1993

Present: Carrico, C.J., Compton, Stephenson, Whiting, Hassell, and Keenan, JJ., and Cochran, Retired Justice

128

*Edwin A. Gendron, Jr. (Gendron & Kirby*, on briefs), for appellant.

*L. Dale McGhee (Philpott & McGhee*, on brief), for appellee.

*Amicus Curiae:* (Kathleen S. Mehfoud; William J. Dinkin; Hazel & Thomas, on behalf of Virginia School Boards Association.)

CHIEF JUSTICE CARRICO delivered the opinion of the Court.

On April 3, 1987, the chairman of the Henry County School Board (the Board) notified Linda Underwood, a county school teacher, that her "continuing contract status [would] be terminated for the 1987-88 school term due to a Reduction in Force." She countered with the filing of a motion for judgment seeking a declaration that the Board's application of its reduction-in-force policy violated state law on the subject of continuing contracts for teachers and also constituted a breach of her contract with the Board.

The trial court ruled that the Board's application of its reduction-in-force policy was neither in violation of state law nor in breach of Underwood's contract. Finding that the trial court did not err in its ruling, we will affirm.

Several statutory provisions are pertinent to resolution of this dispute. Under Code § 22.1-303, a probationary term of three years is required before a teacher may be issued a continuing contract. Under Code § 22.1-304, a teacher employed after completing the probationary period is entitled to a continuing contract "during good behavior and competent service." Section 22.1-304 also provides, however, that "[a] school board may reduce the number of teachers . . . because of decrease in enrollment or abolition of particular subjects," whether or not "such teachers have reached continuing contract status."[1] Finally, Code § 22.1-304 provides that "[w]ritten notice of noncontinuation of the contract by either party must be given by April 15 of each year; otherwise the contract continues in effect for the ensuing year."

Underwood holds a professional certificate issued by the State Board of Education authorizing her to teach health and physical education in kindergarten through twelfth grade.[2] First employed by Henry County in 1979, she completed the three-year probationary period and received a continuing contract in 1982. She taught physical education in the county's schools for eight years prior to her termination in 1987.

---

[1] Lack of funding may also be a basis for a reduction in force. *See* Code § 22.1-304 (school board may not contract for financial obligation beyond period for which funds made available with which to meet such obligation). *See also* Code § 22.1-306(1) (discharge, suspension, or layoff because of insufficient funding not included in definition of term "grievance" in statute establishing teacher grievance procedure).

[2] Underwood was also authorized to teach driver education.

Underwood's continuing contract provides that she may be dismissed, suspended, or placed on probation only for cause. The contract also provides, however, that it would "at all times be subject to any and all laws, rules, regulations, and policies now existing, or hereafter enacted, relating to conditions of employment, such as leave, salaries, and length of school term."

The Board and a teacher enter into only one continuing contract. However, each year, the parties execute a "Continuing Contract Agreement," with an attached page listing "Special Covenants for Ten-Month Personnel." In these latter documents, the Board agrees to continue the teacher's employment at a specified salary for the ensuing ten-month school term. In turn, the teacher agrees to accept such employment, "subject to the authority of [the Board], under the supervision and direction of the division superintendent of schools."

Underwood last executed a "Continuing Contract Agreement" with the Board on May 23, 1986, for the school term extending from August 21, 1986, to June 30, 1987. At the time the agreement was executed, the Board's reduction-in-force policy provided that the number of teachers could be reduced "because of decreases in enrollment or abolition of particular subjects," regardless of whether "such teachers have reached continuing contract status." Under this policy, seniority was the primary factor; teachers "with the least seniority [were] released first."

On March 5, 1987, the Board adopted a revised reduction-in-force policy. Under this policy, the primary factors were "job performance, the specific needs of the school system, and seniority." Teachers were evaluated on the basis of an "R.I.F. score," derived from totalling points awarded for job performance and seniority. The revised policy also allowed the Board to "[f]reeze," meaning "not to R.I.F.," certain teachers performing extra duties, including yearbook sponsor, newspaper sponsor, band director, and head coach of football, basketball, wrestling, track, and baseball.

Experiencing a decline in enrollment and applying the revised policy, the Board reduced from 36 to 29 the number of physical education teachers in the county for the 1987-88 school term. As indicated previously, Underwood was one of those terminated. Not terminated were four probationary physical education teachers who held "frozen" positions as head coaches of basketball and baseball. Underwood had a higher RIF score than all four.

Underwood contends that the Board's "revised RIF policy conflicts with Virginia's continuing contract law by failing to give continuing contract teachers priority over probationary teachers during a general reduction in force." Underwood argues that when Code § 22.1-303, requiring a three-year probationary period, and § 22.1-304, entitling continuing contract teachers to employment during good behavior and competent service, are read together, it is clear that the General Assembly has created two classes, probationary teachers and continuing contract teachers. Probationary teachers, the argument goes, are given no expectation of re-employment and can be dismissed without reason; on the other hand, continuing contract teachers can be dismissed only for cause.

Hence, Underwood maintains, under the statutory scheme enacted in this state, a continuing contract teacher enjoys a higher employment status and greater employment security than a probationary teacher. Yet, Underwood asserts, the Board's revised reduction-in-force policy runs counter to the legislative purpose in creating the scheme and allows the Board, under the guise of reducing its teaching staff, to abrogate the protection afforded continuing contract teachers by Code §§ 22.1-304 and -307.[3] To avoid this result, Underwood urges us to follow the rule, adopted in other states, that, "absent specific statutory authority, a continuing contract teacher may not be laid off pursuant to a RIF policy if a probationary teacher holds a position for which the continuing contract teacher is qualified."

We need not look to the law of other states, however, to decide this case. We think that the law of Virginia clearly supports the Board's action in revising and applying its policy concerning reductions in force.

In the first place, the Constitution of Virginia vests a school board with the power to supervise the schools within its division. Art. VIII, § 7. This delegation of power includes the function of adopting and applying local policies, rules, and regulations for the supervision of the schools, including the management of a teaching

---

[3] Underwood cites that portion of Code § 22.1-304 which provides that, after completing the probationary period, teachers are "entitled to continuing contracts during good behavior and competent service." Section 22.1-307, also cited by Underwood, provides that "[t]eachers may be dismissed or placed on probation for incompetency, immorality, noncompliance with school laws and regulations, disability as shown by competent medical evidence, conviction of a felony or a crime of moral turpitude or other good and just cause."

staff. Code § 22.1-78;[4] *School Board v. Parham*, 218 Va. 950, 958, 243 S.E.2d 468, 472 (1978).

■ Further, Code § 22.1-304 specifically authorizes a school board to "reduce the number of teachers, *whether or not such teachers have reached continuing contract status*, because of decrease in enrollment." (Emphasis added.) Given the italicized language, we think a school board is not required to give continuing contract teachers "priority over probationary teachers," or to recognize that continuing contract teachers enjoy a "higher employment status," during a reduction in force occasioned by a decrease in enrollment.

■ Rather, the language of § 22.1-304 permits a school board, on the occasion of a reduction in force, to treat all teachers as though they had not reached continuing contract status. Indeed, in our view, the language allows a school board to adopt a "freeze" provision, similar to the one adopted here, pursuant to which probationary teachers may be retained in selected positions, to the exclusion of continuing contract teachers, when the school board deems such action to be in the schools' best interest.

Even so, Underwood contends, the Board breached its contract with her by modifying the contractual provisions and implementing the modification during the term of the contract. Again relying upon Code § 22.1-304, Underwood stresses the fact that the Board failed to give her notice on or before April 15, *1986*, of its intention to revise its reduction-in-force policy and to apply the revised policy to reduce the number of physical education teachers for the 1987-88 school year. From this failure, Underwood argues that she was entitled to have her status evaluated according to the provisions of the "Continuing Contract Agreement" she executed on May 23, 1986, for the 1986-87 school term. That agreement, Underwood points out, incorporated the Board's earlier reduction-in-force policy based entirely upon seniority, and she argues that, had the earlier policy been applied, she would not have been terminated.

Underwood concedes the Board's prerogative to revise its reduction-in-force policy and to declare a reduction in force because of

---

[4] Section 22.1-78 provides in pertinent part as follows:

A school board may adopt bylaws and regulations, not inconsistent with state statutes and regulations of the Board of Education, for its own government, for the management of its official business and for the supervision of schools . . . .

declining enrollment. She submits, however, that the revised policy could be implemented only with respect to employment contracts entered into after adoption of the revised policy and then only upon notice given on or before April 15 of the year preceding the year in which the reduction is to occur.[5] She concludes, therefore, that the notice the Board gave her during the term of her 1986-87 contract was ineffectual to support a reduction in force for the 1987-88 school term and, in any event, came too late to terminate her employment, even though given prior to April 15, 1987.[6]

■ We disagree with Underwood. We do not think her position is supported either by the provisions of Code § 22.1-304 or by the terms of her continuing contract. The Code section provides that "[w]ritten notice of noncontinuation of the contract by either party must be given by April 15 of each year." Nothing in this language would justify a holding that notice is insufficient to effect a change during an upcoming school year merely because the notice is given on a date that falls within the term of a "Continuing Contract Agreement." The notice must be given, of course, on or before April 15 preceding the beginning of the upcoming school year.

■ Nor is there anything in the language of Underwood's continuing contract itself that would prevent the Board from revising its reduction-in-force policy during the term of a "Continuing Contract Agreement" and implementing the change in the very next school year after an April 15 notice is given. Indeed, the contract provides otherwise. According to paragraph 11: "This contract shall at all times be subject to any and all laws, rules, regulations, and policies now existing, or hereafter enacted, relating to conditions of employment, such as leave, salaries, and length of school term."

■ The Board's revision of its method of accomplishing a reduction in force is a rule, regulation, or policy within the meaning of

---

[5] In support of her position, Underwood cites two opinions of the Attorney General. *1977-1978 Report of the Attorney General* 359, 360; *1976-1977 Report of the Attorney General* 246, 247. Neither supports Underwood's position. Indeed, both support the opposite view. Underwood also cites *Dennis v. County School Board*, 582 F. Supp. 536 (W.D. Va. 1984). There, the school board did not give a probationary teacher notice of the noncontinuation of his contract until after April 15 of the second year of his employment, and the court held, therefore, that he had stated a claim of entitlement to employment for a third year. Because the factual predicate for the court's decision differs from the factual situation here, the case is inapposite.

[6] As noted previously, the Board's chairman notifed Underwood on April 3, 1987, that her "continuing contract status [would] be terminated for the 1987-88 school term due to a Reduction in Force."

the language of paragraph 11, the revision was made after the contract was entered into, and the change relates to conditions of employment. Hence, neither the enactment nor its implementation can be considered in breach of the contract.

For the reasons assigned, we will affirm the judgment of the trial court.

*Affirmed.*