Linda J. DUGAN, Plaintiff,

v.

**ALBEMARLE COUNTY SCHOOL BOARD, Defendant.**

**No. Civ.A. 399CV00035.**

United States District Court,
W.D. Virginia,
Charlottesville Division.

June 27, 2001.

---

Dexter Brock, Green, Jones & Green, Charlottesville, VA, for plaintiff.

John Lester Cooley, Jr., Wooten & Hart, P.C., Roanoke, VA, Mark A. Trank, Office of County Atty., Charlottesville, VA, for defendant.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

This matter comes before the court on defendant's motion for summary judgment in this action alleging employment discrimination based on race, sex or both in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.* ("Title VII"), (counts I and II), and age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* The above-captioned civil action was referred to the presiding United States Magistrate Judge for proposed findings of fact, conclusions of law, and a recommended disposition. *See* 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge filed his Report and Recommendation on February 26, 2001, recommending that the court deny the defendant's motion for summary judgment as to the plaintiff's claims arising from her reduction in status at Cale Elementary School, but granting summary judgment as to those claims arising from the defendant's failure to hire the plaintiff for positions at Stone Robinson Elementary and Jack Jouett Middle School. The defendant filed timely objections to the Report and Recommendation, to which the plaintiff responded. No objections having been filed to the Magistrate Judge's granting of summary judgement as to the claims of discrimination relating to Stone Robinson Elementary or Jack Jouett Middle School, such issues will not be addressed in this opinion. The court has, however, performed a *de novo* review of those portions of the Report and Recommendation as to which objections were made. *See* 28 U.S.C. § 636(b)(1)(C). Having thoroughly considered the entire case and all relevant law, the court sustains the defendant's objection to the Report and Recommendation and grants the motion for summary judgment for the reasons stated herein.

## I.

The following facts are undisputed or presented in the light most favorable to the plaintiff, Linda J. Dugan. Dugan, a 53–year–old white female, began working for the Albemarle County school system during the 1990–1991 academic year and taught in various capacities, both part-time and full-time, until the 1994–1995 school year. In that year, Dugan was hired by Gerald Terrell, the principal of Cale Elementary School ("Cale") and an African–American, to serve as a part-time teacher in Cale's physical education ("P.E.") department. Dugan's status at Cale was subsequently increased to full-time, a status she maintained for the 1996–97 and 1997–98 school years.

In 1998, the Virginia public school system began implementing Standards of Learning ("SOL") requirements, whereby public schools are given accreditation based upon student scores on standardized tests. In order for a school to maintain accreditation, 70% of its students in specif-

ic grade levels must pass SOL tests in certain subjects. P.E. is not one of the subjects tested under the SOL.

In anticipation of the impending SOL requirements, the State Board of Education issued a mandate in September 1997 requiring that 75% of class time be devoted to the study of core subjects. Under this mandate, only 225 minutes per week were to be spent on the non-core subjects of art, music and P.E. In an effort properly to divide these 225 minutes, the Albemarle County public school system established an Elementary Task Force to set uniform curriculum and staffing standards that would comply with SOL requirements. The task force determined that, of the 225 minutes available for non-core subjects, 120 minutes be allocated to P.E.

In the Albemarle County public school system, school principals are assigned a specific number of Function Teaching Equivalents ("FTEs") to be allocated among the non-core subjects. One FTE equals one full-time teaching position. A principal has discretionary powers, subject to school board regulations, to allocate the FTEs as necessary. Following the reduction in P.E. minutes by the task force, Terrell was notified in the winter of 1998 that he had only 2.5 FTEs to allocate within the P.E. department at Cale, a decrease from the prior year's 3.0. This reduction in FTEs will be referred to as a reduction-in-force ("RIF").

During the 1997–1998 school year, Cale employed three full-time P.E. teachers; Dugan, Edwin "Skip" Hudgins, and Steve Ivory, an African–American. At that time, only Hudgins had attained "continuing contract" status, or tenure, which requires three years of probationary full-time employment. Both Dugan and Ivory were in

the midst of probationary periods of employment, with Dugan having served more continuous full-time employment in the Albemarle County school system than Ivory. Though the parties disagree over the application of the Albemarle County guidelines for staff reductions among or between probationary employees, they do not dispute that Terrell was required to reduce the FTEs of probationary teachers before reducing the FTEs of any teacher with continuing contract status. Therefore, in accordance with school board policy, Terrell made the decision in February 1998 to retain Hudgins at a 1.0 FTE level, leaving 1.5 FTEs to be allocated between Dugan and Ivory. Terrell then reduced both Dugan and Ivory to .75 FTE status. Terrell subsequently provided Dugan with an additional .05 FTE, raising her total FTE level to .80.[1]

Dugan alleges that Terrell violated Albemarle County school board policy in implementing the RIF. Specifically, she argues that, under the relevant policy, seniority must be taken into account when reducing the work force and that, accordingly, she should have retained her full-time position while Ivory should have been reduced to .5 FTEs. Dugan claims that Terrell's failure to follow procedure is evidence of racial, gender and age discrimination. That is, it is argued that Terrell did not maintain Dugan's full-time status because doing so would have required a substantial reduction in the FTEs assigned to Ivory, who Terrell preferred for the P.E. position because he was a young, African–American male. To support this claim, Dugan asserts that, in addition to the fact that both are African–Americans, Ivory and Terrell

---

1. This additional .05 FTE was apparently obtained as the result of an FTE balance in the Cale art department.

participate in social activities together and attend the same church.

Aside from claiming that she was discriminated against in the allocation of FTEs at Cale, Dugan argues that Ivory's subsequent attainment of supplemental FTEs at another Albemarle County school corroborates her discrimination claim. Dugan cites evidence that Terrell asked Sue Newman, the Assistant Vice Principal at Cale, to arrange Ivory's schedule such that he could take an afternoon position in the P.E. department of the newly opened Monticello High School ("MHS"). While Ivory had already been hired as the head track coach and assistant football coach at MHS, Dr. Irving Jones, the principal of MHS and an African–American, contacted Terrell in the summer of 1998 to inquire whether Ivory had time in his schedule at Cale also to teach P.E. part-time at MHS. Dr. Jones stated that MHS was in need of a male P.E. teacher to monitor the men's locker room as both of its current P.E. teachers were female. By acquiring this position at MHS, Ivory was able to maintain full time status despite the reduction in his FTEs at Cale. Dugan asserts that the lack of publicity and open competition for the P.E. position at MHS, combined with Terrell's efforts to accommodate Ivory's efforts to assume the MHS vacancy, supports an inference that she was impermissibly discriminated against on account of her race, age or gender.

## II.

Before the court is the defendant's motion for summary judgment. A party is entitled to summary judgment when the pleadings and discovery show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986). "[S]ummary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion." *Hawkins v. Pepsico, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991)). If the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party, then there are genuine issues of material fact. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All facts and reasonable inferences that can be drawn therefrom must be interpreted in the light most favorable to the non-moving party. *See Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990). However, the non-movant may not rest upon mere allegations and denials of the pleadings, and must assert more than a "mere scintilla" of evidence in support of her case in order to survive an adverse entry of summary judgment. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Of particular relevance to the instant case, courts must take special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue. *See Beall v. Abbott Laboratories*, 130 F.3d 614, 619 (4th Cir.1997) (citing *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 958–59 (4th Cir. 1996)).

## III.

The defendant moved for summary judgement on the plaintiff's claims of race, gender and age discrimination. The Magistrate Judge recommended denial of this motion with regard to the plaintiff's discrimination claims arising from her reduction in status at Cale. The defendant has objected to the recommendation, claiming either that the plaintiff failed to make a *prima facie* showing of discrimination with admissible evidence or that the plaintiff

failed to show that the proffered reasons for the hiring decision were pretextual. The paucity of evidence as to possible pretext and discriminatory intent requires this court to grant summary judgement for the defendants.

■ Although the ADEA and Title VII address different types of employment discrimination, the methods by which a plaintiff may prove discrimination under either statute are fundamentally the same. *Compare Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 958–60 (4th Cir.1996) (Title VII failure to promote), *and Carter v. Ball,* 33 F.3d 450, 458 (4th Cir.1994) (same), *with Barber v. CSX Distrib. Servs.,* 68 F.3d 694, 698 (3d Cir.1995) (applying Title VII proof scheme to ADEA failure-to-promote claim). To prevail in either a Title VII or ADEA action in which, as here, there exists only circumstantial evidence of discrimination, the governing proof framework is that established in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this proof scheme, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *See Mitchell v. Data General Corp.,* 12 F.3d 1310, 1315 (4th Cir.1993). If the plaintiff adduces evidence establishing a *prima facie* case, a presumption in favor of the existence of the unlawful discrimination arises and the burden of production shifts to the defendant-employer who next must articulate a "legitimate, nondiscriminatory reason" for the adverse employment decision. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the defendant demonstrates such a reason, the plaintiff must then prove by a preponderance of the evidence that the defendant's proffered reasons were a pretext for discrimination. *Id.* Notwithstanding the shifting of burdens of production, at all times the plaintiff retains the ultimate burden of persuasion with regard to the allegation of impermissible discrimination. *Id.*

■ We assume, *arguendo,* that Dugan has satisfied the minimal requirements necessary to establish a *prima facie* case. Therefore, "the burden of production shifts to [the defendant] to articulate some legitimate, nondiscriminatory reason" for the manner in which it allocated FTEs between the three physical education ("P.E.") teachers at Cale. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. The defendant asserts that, pursuant to school board policy, it is required, if possible, to provide full-time positions to tenured teachers and it is prohibited from reducing a tenured teacher's FTEs unless it first reduces those of all non-tenured teachers in the same department. Therefore, the school board could not decrease the FTEs allocated to Hudgins, the only tenured teacher in the Cale P.E. department. Furthermore, the defendant claims that, if the remaining 1.5 FTEs were distributed as the plaintiff desires, with Ivory receiving .5 and Dugan a full-time position, the former would have had to leave Cale each day by 11:22 a.m., which, under the 1998–99 school schedule, would have left P.E. students without the supervision of a P.E. teacher until 12:45 p.m.

■ Because the defendant has successfully presented evidence of a legitimate, nondiscriminatory reason for its allocation of FTEs, namely, the incompatibility of having two full-time P.E. teachers with the new Cale course schedule, Dugan must prove that this proffered reason was mere pretext and that race, age, or gender was the real reason she was denied full-time employment. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Dugan has failed to meet this burden. The plaintiff claims that Terrell made no effort to

determine whether adjustments could be made to the schedule that would permit both the full-time employment of Dugan and the attainment of educational goals as mandated by the State Board of Education. Furthermore, it is argued that, even under the existing schedule, the period left unsupervised as the result of Ivory's 11:22 a.m. departure could have been overseen by a classroom teacher as, under Virginia state standards, elementary physical education is not required to be delivered by a certified physical education teacher. The plaintiff maintains that Terrell's failure to consider these alternatives is evidence that the defendant's proffered explanation for denying her full-time employment is untrue. However, no evidence supports this conclusion. While the fact that Terrell did not consider plaintiff's quasi-recess proposal or similar alternatives may be deemed evidence of myopic school management by some, it is far from sufficient to establish that the proffered reason is a subterfuge for what in reality was discriminatory motivation. As the Fourth Circuit has recognized, the court, "does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with discrimination...." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 298 (4th Cir. 1998) (quoting *Giannopoulos v. Brach & Brock Confections Inc.*, 109 F.3d 406, 410 (7th Cir.1997)).

■ Nevertheless, the plaintiff argues that, not only did Terrell fail to consider scheduling alternatives that would have accommodated two full-time P.E. teachers, but he also assigned the FTE balance in

violation of established school board policy. Specifically, the plaintiff asserts that, under the policy, Dugan's seniority over Ivory requires that, between the two, she be the last to suffer *any* reduction-in-force. The implication of this reading of the defendant's policy is that, in any given department, the least senior member must suffer a complete reduction before the next ranking member bears any reduction whatsoever. However, this construction of the relevant provision erroneously assumes that it not only addresses the "order of reduction," as indicated by its title, but also the extent to which a teacher's FTEs are reduced. The provision only requires that teachers within a given department be reduced in *order* of seniority, and not necessarily that the least senior member absorb the entirety of any wholesale FTE reduction before the balance remaining, if any, is then applied to others. Thus, if Terrell had decided to reduce only one of the two probationary employees, dividing the FTEs into 1.0 and .5, the "order of reduction" policy would presumably require that Ivory, the less senior member, be the one to receive the reduction. However, when, as in this case, a decision is made simultaneously to reduce a number of probationary teachers within a department, the "order of reduction" policy arguably does not apply, and seniority considerations, while certainly permitted, are not required.[2] Such an interpretation of the school board's policy is in accord with the extensive managerial discretion generally afforded school principals under Virginia law.[3]

2. In fact, the Virginia Supreme Court has held that, during a reduction in force, tenured teacher need not receive preference over probationary teacher if the school board decides that maintaining a probationary employee, to the exclusion of a tenured employee, is in the school's best interest. *See Underwood v. Hen-*

*ry County School Bd.*, 245 Va. 127, 132, 427 S.E.2d 330, 333 (1993) (RIF caused by decline in enrollment).

3. School boards are granted wide latitude in Virginia, and even when a court reviews a school board's decision *de novo*, "a school

■ Even if Terrell's allocation of FTEs had been in violation of the school board's established policy, evidence of such breach alone would be inadequate to establish that the decision was based on an impermissible motivation under Title VII or the ADEA. The plaintiff claims that, under *Vaughan v. Metrahealth Companies, Inc.,* failure of an employer to follow one of its own clearly established policies is evidence of pretext. 145 F.3d 197 (4th Cir.1998). However, as even *Vaughan* makes clear, "the *McDonnell Douglas* proof scheme" requires the plaintiff to prove that the employer's proffered explanation is "a pretext *for discrimination.*" *Id.* at 201 (quoting *Texas Dept. of Community Affairs,* 450 U.S. at 253, 101 S.Ct. 1089). In other words, the burden is on Dugan to show that she was not provided full-time employment *because* she is white, female, or over forty; not that she was denied full-time employment *and* she is white, female, or over forty.

■ The plaintiff argues, however, that Terrell's extensive association with Ivory demonstrates that the employment decision at issue was motivated, not by innocuous scheduling considerations, but by race, gender or age-based biases. To support this claim, the plaintiff alleges that Terrell and Ivory attend the same church and social functions and that they "have a close enough relationship that Ivory cuts Terrell's hair." While these facts may support an inference that Terrell and Ivory were closer acquaintances than Terrell and Dugan, and, according to the plaintiff, may even lead some to question the defendant's proffered explanation for denying Dugan full-time employment, they are entirely insufficient grounds for inferring that intentional discrimination occurred in this case. As set forth in *St. Mary's Honor Center,* "[i]t is not enough ... to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." 509 U.S. at 519, 113 S.Ct. at 2754.

■ Furthermore, it is well established that cronyism, while unfair, is not tantamount to racial discrimination under Title VII or age discrimination under the ADEA. *See Maryland Troopers Ass'n v. Evans,* 993 F.2d 1072, 1077 (4th Cir.1993). Contrary to the findings of the Magistrate Judge, the plaintiff has produced no evidence that, if a friendship exists between Ivory and Terrell, it is "rooted in their common race." In fact, even if it were possible for the plaintiff to show that Terrell chooses personal acquaintances based in part on mutual interests tangentially related to race, age or gender, such determination does not transfer automatically into a presumption that Terrell utilizes the same considerations when making employment decisions. To do so would, in effect, extend the coverage of Title VII and the ADEA to individual decisions regarding whom to befriend outside the workplace.

■ In addition, the plaintiff's complaint regarding the manner in which Ivory acquired the Monticello High School position does little to bolster her nebulous

---

board's final decision 'will not be disturbed by the courts unless the board acted in bad faith, arbitrarily, capriciously, or in abuse of its discretion, or there is no substantial evidence to sustain its action.'" Russell County School Bd. v. Anderson, 238 Va. 372, 386, 384 S.E.2d 598, 605 (1989) (quoting *Spotsylvania School Board v. McConnell,* 215 Va. 603, 212 S.E.2d 264 (1975)). The Virginia

Supreme Court has held that school principals are essentially counterparts to school board superintendents, granting the former the same immunity as the latter. *See Banks v. Sellers,* 224 Va. 168, 173, 294 S.E.2d 862, 865 (1982). Thus, school principals like Terrell, are entitled to broad latitude in their decision-making.

discrimination claim. Ivory had already been acting as a track and football coach at MHS when Dr. Jones approached him regarding the part-time P.E. position. It seems entirely reasonable that Dr. Jones, based on his observation of Ivory's performance as a coach at MHS, would consider Ivory an attractive candidate for additional roles at the high school. While Dr. Jones' efforts to broadcast the opening may have been inadequate, it can hardly be argued that such an error signifies discriminatory intent. The plaintiff has failed to present any evidence providing an inference that Dr. Jone's decision was motivated by impermissible race, gender or age considerations. In fact, there is some reason to believe that Dr. Jones had no choice but to hire a male P.E. teacher because the current MHS P.E. teachers were both female, and thus, could not monitor the men's locker room. Furthermore, there is no support for the allegation that Terrell's willingness to accommodate Ivory's schedule so that he could accept the MHS position was based on race, gender or age considerations. The plaintiff has presented no basis for concluding that Terrell would have not made similar accommodations for Dugan had the opportunity presented itself.

■■■ While Dugan speculates regarding circumstances she feels raise the specter of discrimination, no evidence is provided that suggests that this is a reasonable probability, rather than merely a possibility. *See DeJarnette v. Corning Inc.*, 133 F.3d 293, 298 (4th Cir.1998). For "a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir.1989). In addition, the plaintiff fails to address why Terrell, the supposed discriminator, would have hired her in the first place only later to discriminate against her. *See Proud v. Stone*, 945 F.2d 796, 797 (4th Cir.1991). Dugan possessed the relevant characteristics she now claims were the subject of discrimination when she was initially hired by Terrell for the Cale position. Because the plaintiff has been unsuccessful in her attempt to create a genuine issue of fact regarding the defendant's justifications for its allocation of FTEs, summary judgement is appropriate.

## IV.

For the foregoing reasons, the Report and Recommendation shall be rejected and the defendant's motion for summary judgement shall be granted. An appropriate order shall this day enter.

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is accordingly this day

## ADJUDGED ORDERED AND DECREED

as follows:

(1) The February 26, 2001 Report and Recommendation of the Magistrate Judge shall be REJECTED.

(2) The defendant's January 18, 2001 Motion for Summary Judgment shall be, and hereby is, GRANTED.

The Clerk of the Court hereby is directed to send a certified copy of this order and the accompanying Memorandum Opinion to all counsel of record and to Magistrate Judge Crigler.